UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

Laura Catley,

              Plaintiff,

       -against-

Sun of May, LLC d/b/a Corner Social,
Anahi Angelone, Raphael Benavides,
jointly and severally,

              Defendants.

-------------------------------------------------------x

**COMPLAINT**

Civil Action No. _____

**JURY TRIAL REQUESTED**

Plaintiff Laura Catley (hereinafter "Plaintiff"), by and through her attorneys Eisner &
Dictor, P.C., whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006,
for her complaint alleges, upon information and belief as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Sun of May, LLC d/b/a Corner Social, Anahi
Angelone and Raphael Benavides, collectively referred to throughout as "Defendants," due to their
unlawful sex discrimination, quid pro quo sexual harassment, hostile work environment and
retaliation in violation of Title VII of the Civil Rights Act of 1964, ("Title VII") 42 U.S.C. § 2000e
*et seq.*

2.    Plaintiff further brings this action based on Defendants' violation of New York
State Human Rights Law ("NYSHRL"), New York Executive Law § 290 *et seq.* and New York
City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 *et seq.* for
unlawful sex discrimination, sexual harassment, hostile working environment and retaliation.

3.    This lawsuit seeks actual, compensatory and punitive damages, as well as
declaratory and injunctive relief based on Defendants' unlawful discrimination against Plaintiff on
the basis of sex, sexual harassment, retaliation, and creating a hostile work environment.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. §1331, as this action arises under Title VII.

5.     This Court may assert supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims under 29 U.S.C. § 1367.

6.     Venue is proper in the Southern District of New York, under U.S.C. 28 §1391, as the events and/or omissions giving rise to Plaintiff's claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.     On June 21, 2017, Plaintiff filed her initial complaint with New York State Division of Human Rights and cross-filed the Equal Employment Opportunity Commission ("EEOC"). On November 29, 2017, Plaintiff timely requested her Right to Sue Letter from the EEOC.

8.     In or about December, 20, 2017, Plaintiff received a Right to Sue Letter from the EEOC, dated December 18, 2017 (Exhibit A). Thereafer, Plaintiff timely filed her Notice and Summons in the Souhern District of New York federal court within 90 days of receipt of her Right to Sue Letter.

## PARTIES

9.     Plaintiff is a 21 year old female student and a citizen of New Zealand, who, at all times relevant to the complaint, resided in New York County, State of New York.

10.     At all times relevant to the complaint Plaintiff was an individual and employee of Defendants within the meaning of 42 U.S.C. §2000e. Plaintiff was employed as a server by Defendants.

11.     Defendant Sun of May, LLC d/b/a Corner Social (hereinafter "Corner Social") is a domestic corporation, organized under the laws of State of New York and authorized to do business in State of New York. Defendant Corner Social is a Harlem-based restaurant and bar and maintains its principal place of business at 321 Malcolm X Boulevard, New York, New York 10027.

2

12.     At all times relevant, Corner Social has been Plaintiff's employer within the meaning of 42 U.S.C. §2000e, as it is engaged in an industry affecting interstate commerce and employed more than 20 employees for each working day during each of 20 or more calendar work weeks in the current and preceding calendar year.

13.     Upon information and belief, Defendant Anahi Angelone is and has been at all times relevant to this action, the owner of Corner Social, and is responsible for the operation of Corner Social (hereinafter "Owner Angelone"). Upon information and belief, and at all times relevant to the Complaint, Owner Angelone had direct control over all employment practices at Corner Social.

14.     From on or about November of 2015, Defendant Raphael Benavides has been the General Manager of Operations at Corner Social, and as such, is responsible for directly supervising, hiring and firing the Corner Social employees (hereinafter "GM Benavides"). Upon information and belief, and at all times relevant, GM Benavides has had direct control over employment practices regarding the servers and bartenders at Corner Social.

15.     On information and belief, and at all times relevant, each individual Defendant maintained, individually and jointly, substantial control over the terms and conditions of Plaintiff's employment, including, but not limited to, hiring and firing authority, disciplinary authority and authority to investigate sex discrimination and hostile work environment claims.

## OPERATIVE FACTS

16.     Plaintiff is a 21-year-old, female student. Plaintiff is originally from New Zealand, but moved to New York in or about February of 2017 to take time out from pursuing a Chemical and Material Engineering Degree and gain U.S. work experience.

17.     In need of a job, Plaintiff interviewed with GM Benavides for a Server position at Corner Social, a Harlem-based restaurant and bar.

18.     Upon information and belief, GM Benavides is a Harlem restaurateur, and is highly experienced in opening restaurants since early 2000. GM Benavides is a powerful figure in the Harlem hospitality industry and, in addition to Corner Social, also co-owns, with Owner Angelone, Minton's Playhouse and The Cecil Steakhouse.

19.     On or about March of 2017, Plaintiff was hired as a Server at Corner Social by GM Benavides.

20.     On her first day of work Plaintiff learned that her direct supervisor was Camille James (hereinafter "Supervisor James"). However, almost immediatetly, GM Benavides took a special interest in directly managing Plaintiff.

21.     GM Benavides chatted Plaintiff up after work, and learned that she was a student from New Zealand. He learned that Plaintiff needed her job. GM Benavides cultivated a strong sense of loyalty from Plaintiff by providing her with a job, despite her lack of prior restaurant experience, and by frequently reminding her that she was "part of his team."

22.     GM Benavides also learned that Plaintiff was on a temporary J1 Work and Travel visa and would have no choice but to leave the U.S. to return to New Zealand in January of 2018. Nonetheless, GM Benavides tried to come up with employment positions that would legally allow Plaintiff to stay in New York City beyond January of 2018.

23.     In or about mid-April of 2017, GM Benavides told Plaintiff that he was going to be "taking over" a new, second restaurant for Owner Angelone (hereinafter "New Restaurant"). He praised her exceptional work performance and futher promised to train her into a managerial position at the New Restaurant.

24.     Plaintiff enjoyed speaking with GM Benavides and learning about the New Restaurant and the opportunity to move up to a managerial job.

25.     On or about April 24, 2017, GM Benavides invited Plaintiff to have a drink after work to continue discussing the New Restaurant. Plaintiff agreed.

4

26.     After work on April 24, 2017, Plaintiff began asking questions about the Manager opportunity, but GM Benavides changed the topic of discussion. Instead, GM Benavides told Plaintiff that he was Argentinian and began making bizarre comments such as, "Latin men, [referring to himself] make the best lovers." Plaintiff was shocked and felt very uncomfortable.

27.     GM Benavides then asked Plaintiff to "go out on a date" with him. Plaintiff refused and responded "no" to the date.

28.     After April 24, 2017, Plaintiff began noticing GM Benavides's vindictive and retaliatory behavior toward persons at Corner Social and at Palma, another restaurant in which he was a General Manager. For example, when a hostess told GM Benavides that she wanted to quit Corner Social so she could live downtown, he called her a "stupid girl." In another instance, GM Benavides had placed a manager at Palma. The owner of Palma later had "spoken ill" of the manager. GM Benavides stated to Plaintiff he would love to "take her [the Palma owner] down" because of the owner's negative feedback about the employee he had hired. GM Benevides's open and hostile comments were a warning to Plaintiff that if she defied him, he would also retaliate against her.

29.     Despite that Plaintiff told GM Benavides that she was not interested in going out on April 24, 2017, he continued to constantly ask her out on dates, in person, over text, during work and after.

30.     Plaintiff realized that GM Benavides was not going to stop asking her out because he thought it was a game that he would eventually win. Plaintiff became nervous that if she refused him seriously, he would retaliate against her and refuse to train her for the manager position. To protect herself from retaliation, Plaintiff told him that she would "think about it," but also told him that it was inappropriate to date because they worked together.

31.     On or about April 30, 2017, GM Benavides insisted that Plaintiff go with him to the site of the New Restaurant. GM Benavides told her, "I want you to see the restaurant because

you will be working here." Plaintiff was thrilled about the manager position.

32.     After, GM Benavides said "I want to smoke cigars." Plaintiff was feeling so grateful to GM Benavides about the job that she agreed to smoke a cigar in celebration. GM Benavides had his driver pick them up and take them to his home to smoke the cigars.

33.     Plaintiff immediately regretted smoking with GM Benavides as he began incessantly and daily texting Plaintiff, insisting that she socialize with him after work. Plaintiff knew how powerful GM Benavides was, and felt that to appease him she had no choice but spend at least some time with him after work.

34.     On or about May 3, 2017, GM Benavides wore her down and convinced her to go to his friend's restaurant opening. At the opening, GM Benavides begged her to dance with him several times. Plaintiff finally was forced to dance with GM Benavides. After, GM Benavides asked if he could kiss her. Plaintiff said "no."

35.     After the event, GM Benavides's driver picked them up and he very tightly and firmly held Plaintiff's hand and refused to let go. Plaintiff felt trapped and extremely nervous.

36.     When Plaintiff finally got home, Plaintiff felt ill and resolved to never again socialize with GM Benavides outside of work, even if it meant enduring retaliation and not receiving the manager promotion.

37.     The next week at work, GM Benavides avoided Plaintiff after she rejected his advances at the restaurant opening.

38.     A week later, on or about May 11, 2017, Plaintiff asked GM Benavides over text message if she could start manager training for the new restaurant the next day. However, GM Benavides said no, and offered her the next week instead. She responeded that she was already scheduled to work 40 hours next week. GM Benavides only suggested, "Nothing worthwhile is ever easy..." Plaintiff realized the double entendre of his message. Upon information and belief,

6

GM Benavides meant that Plaintiff would have to give in to his sexual demands in order to receive manager training.

39.     A few days later, Plaintiff again asked GM Benavides when she could start manager training for the new restaurant. Again, GM Benavides gave a vague, indefinite response.

40.     Later that day, Plaintiff was confused and embarassed to learn from Manuel Pina (hereinafter "Co-worker Pina") that GM Benevides offered the position of Manager of the New Restaurant to him and that GM Benavides was planning to train him to be a Manager of the New Restaurant. Co-worker Pina further suggested that he knew nothing about Plaintiff being considered for the Manager position of the New Restaurant. Thereafter, Plaintiff never heard from anyone, including GM Benavides, about training for the manager position at the New Restaurant.

41.     Upon information and belief, Plaintiff was never being considered for the promotion to Manager of the New Restaurant; it was all a scheme to make her feel a sense of loyalty and obligation to GM Benavides.

42.     Thereafter, GM Benavides avoided Plaintiff, and further retaliated against Plaintiff by denying her tips whenever she served one of his tables.

43.     Upon information and belief, GM Benavides stopped speaking to Plaintiff, denied her the promised promotion to Manager, gave said promotion to her male co-worker, and denied her tips because she refused to given in to his sexual demands.

44.     In or about May of 2017, Plaintiff looked at her schedule and noted that she was off on May 29th.

45.     However, on May 28, 2017, Plaintiff was confused to see that she was suddenly scheduled to work the next day on May 29th. Plaintiff was never notified of this change, and knew that if she hadn't checked, she would have been unjustly reprimanded if she had not showed up for work on May 29th.

46.     Plaintiff immediately notified Supervisor James, who was in charge of all scheduling for Corner Social. However, Supervisor James only said she "had no idea" about the schedule changes.

47.     Plaintiff also noticed that her requested time off on June 3, 2017 had strangley disappeared completely off of Corner Social's scheduling system. Since Plaintiff was scheduled to work that day she had to pay a co-worker to cover for her.

48.     When Plaintiff immediately notified Supervisor James again, she said she had no idea about the change.

49.     On June 1, 2017, Plaintiff was yet again surprised when she was scheduled to work in the evening, and a few hours before her shift began, the shift was suddenly and without explanation taken away.

50.     Yet again, Plaintiff brought the abrupt scheduling change to Supervisor James, who didn't know about it and did nothing.

51.     Upon information and belief, GM Benavides, in retaliton for Plaintiff's rejection of his sexual advances, denied her the promised promotion to manager of the New Restaurant, refused to provide her with tips earned at his tables, and had her schedule sabatoged.

52.     Further, upon information and belief, GM Benavides knew that Plaintiff was an intelligent and highly capable young woman, he learned about her in order to manipulate and groom her, and he played into her strong sense of loyalty in order to get sexual favors from her.

53.     Plaintiff was humiliated that she was wholly taken in by GM Benavides's "special interest" in her, by his praise of her intelligence and hardwork as an employee, and by his power to promote her to a managerial position. Plaintiff was manipulated by GM Benavides and pressured for sex. Plaintiff knew that since she rejected GM Benavides's sexual advances, her work environment had become hostile and toxic and that it was only going to become worse if she continued to stay.

8

54.     Despite that Plaintiff needed her job until she could return to New Zealand, on June 2, 2017, Plaintiff sent an email to Defendants notifying them of her two week's notice, and intent to leave Corner Social.

55.     On June 16, 2017, Plaintiff left her position as a server at Corner Social.

## FIRST CAUSE OF ACTION
*Sex Discrimination, Harassment, and Hostile Work
Environment under Title VII*

56.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "55" as if set forth fully herein.

57.     Plaintiff is a female at all relevant times and is a member of a protected class under 42 U.S.C. §§2000e *et. seq.*

58.     Plaintiff was and is qualified to work as an employee for Corner Social and is able to perform all of the duties required by the positions held at Corner Social. Plaintiff was praised throughout her employment at Corner Social as intelligent and hardworking.

59.     Defendants subjected Plaintiff to a hostile work environment, as well as adverse employment actions because of her gender.

60.     Plaintiff was unlawfully subjected to sexual harassment when GM Benavides made unceasing sexual demands in exchange for the opportunity to be promoted as manager. GM Benavides further subjected Plaintiff to sexual harassment by retaliating against her when she rejected the sexual demands by freezing her out at work, refusing to promote her, by altering her work schedule, and refusing her earned tips.

61.     The sexual harassment Plaintiff suffered was severe and pervasive, unwelcome by Plaintiff and would be offensive to a reasonable person.

62.     The sexual harassment Plaintiff suffered severely affected the terms and conditions of her employment.

63.   Plaintiff repeatedly reported the retaliation and discrimination to her Supervisor and the harassment was repeatedly conducted by GM Benavides and witnessed by Defendants' employees. Defendants knew, or should have known, about the harassment and discrimination and its effects on Plaintiff's employment. Despite this, Defendants failed to take necessary steps to remedy the discrimination.

64.   Defendants allowed Plaintiff to suffer *quid pro quo* supervisorial sexual harassment. When Plaintiff finally rejected GM Benavides's sexual advances she suffered retaliation, including, but not limited to, denial of tips, punitive work schedule changes, and denial of a promised promotion to manager.

65.   Defendants' violations of Plaintiff's rights has resulted in Plaintiff's loss of monetary and other benefits associated with her employment.

66.   Defendants' violations of Plaintiff's rights has also resulted in Plaintiff's extreme stress, anxiety regarding her ability to provide for herself, ongoing humiliation among her family, friends and co-workers, damage to her good reputation, and disruption of her personal life.

## SECOND CAUSE OF ACTION
*Sex Discrimination under NYSHRL and NYCHRL*

67.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" thorugh "66" as if set forth fully herein.

68.   Plaintiff is a female at all relevant times and is a member of a protected class under New York State and New York City Human Rights Laws.

69.   Plaintiff was unlawfully subjected to sexual harassment when GM Benavides made unceasing sexual demands in exchange for the opportunity to be promoted to a manager. GM Benavides further subjected Plaintiff to sexual harassment by retaliating against her when she rejected the sexual demands by freezing her out at work, refusing to promote her, by altering her work schedule, and refusing her earned tips.

70. The sexual harassment Plaintiff suffered was severe and pervasive, unwelcome by Plaintiff and would be offensive to a reasonable person.

71. The sexual harassment Plaintiff suffered severely affected the terms and conditions of her employment.

72. Plaintiff repeatedly reported the retaliation and discrimination to her Supervisor and the harassment was repeatedly conducted by GM Benavides and witnessed by Defendants' employees. Defendants knew or should have known about the harassment and discrimination and its effects on Plaintiff's employment. Despite this, Defendants failed to take necessary steps to remedy the discrimination.

73. Defendants' violations of Plaintiff's rights has resulted in Plaintiff's loss of monetary and other benefits associated with her employment.

74. Defendants' violations of Plaintiff's rights has also resulted in Plaintiff's extreme stress, anxiety regarding her ability to provide for herself, ongoing humiliation among her family, friends and co-workers, damage to her good reputation, and disruption of her personal life.

## **RELIEF SOUGHT**

Plaintiff seeks judgment against Defendants as follows:

i. On the First Cause of Action, awarding Plaintiff compensatory, including punitive damages in an amount to be determined at trial, but no less than $1,000,000.00.

ii. On the Second Cause of Action, awarding Plaintiff compensatory, including punitive damages in an amount to be determined at trial, but no less than $1,000,000.00.

iii. In addition, awarding Plaintiff the costs of this action, together with reasonable attorney's fees, and, such additional equitable and legal relief as the Court deems just and proper.

## **JURY TRIAL**

Plaintiff demands a jury trial for all causes of action and claims for which she has a right

to a jury trial.

Dated: New York, New York
       March 12, 2018

                                    Respectfully submitted,

                                    EISNER & DICTOR, P.C.
                                    *Attorneys for Plaintiff*

                                    By: _____
                                           Benjamin N. Dictor
                                    39 Broadway, Suite 1540
                                    New York, NY 10006
                                    Tel: (212) 473-8700  / Fax: (212) 473-8705
                                    ben@eisnerdictor.com